UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) | |
| Plaintiff, ) ) | Cause No.: 4:07CV270 JCH |
| vs. ) ) | |
| MICHAEL F. SHANAHAN, SR., and ) MICHAEL F. SHANAHAN, JR., et al, ) ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Michael F. Shanahan, Sr.'s Motion for Partial Summary Judgment and Motion to Strike or Dismiss Time-Barred Allegations, filed September 2, 2008. (Doc. No. 36). The matter is fully briefed and ready for disposition.

**BACKGROUND**[1]

Engineered Support Systems, Inc. ("Engineered Support" or the "Company") is a Missouri corporation, with its principal place of business in St. Louis, Missouri. (Complaint ("Compl."), Cause No. 4:07CV1262 ERW[2], Doc. No. 1, ¶ 14). Engineered Support is a holding company for a number of wholly-owned subsidiaries that design and manufacture military support equipment and electronics, primarily for the U.S. Department of Defense. (Id.). Engineered Support's common stock was traded on the NASDAQ NMS, and was registered with the United States Securities and Exchange

---

[1] The majority of the Court's background section is taken from the Securities and Exchange Commission's Complaint, to which Defendant Michael F. Shanahan, Sr. has not yet filed an answer.

[2] On October 24, 2007, this Court consolidated Cause No. 4:07CV1262 ERW with this action. (Doc. No. 32).

Commission (the "Commission" or "SEC") pursuant to Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act"), until it was acquired by DRS Technologies, Inc. on January 31, 2006. (Id.). Defendant Michael F. Shanahan, Sr. ("Shanahan") was the founder of Engineered Support, and served as its Chief Executive Officer ("CEO") and Chairman of the Board of Directors ("Chairman") until April, 2003, when he stepped down as CEO. (Id., ¶ 12). Shanahan continued to serve as Chairman until his retirement in May, 2005, when he became non-executive Chairman. (Id.).

According to the SEC, between at least 1985 and January, 2006, Engineered Support issued stock options to employees and non-employee directors pursuant to shareholder-approved stock option plans. (Compl., ¶ 15). From 1997 through 2002, the Company had two types of stock option plans in effect: one for officers, key employees and consultants ("Stock Option Plan"), and another for non-employee directors ("Non-employee Director Plan"). (Id.). Copies of these plans were included in the Company's proxy statements filed with the Commission, and the plans were approved by the Company's shareholders at annual shareholder meetings. (Id.).

The Stock Option Plan set a total amount of options to be allocated among officers, key employees, and consultants, and charged the Engineered Support Compensation Committee with administration of the plan. (Compl., ¶ 16). Engineered Support's Non-employee Director Plan provided for non-employee directors to receive a fixed number of options each year, immediately following the annual shareholder meeting in March. (Id., ¶ 17). The limitation on option grants was intended to ensure that stock options issued under the Non-employee Director Plan comported with the Rule 16b-3 exemption from Section 16(b) of the Exchange Act. (Id.). Shanahan was ultimately responsible for authorizing Engineered Support's stock option awards from 1997 through 2002, and between 1997 and 2001, he personally signed option award letters and certificates for virtually all

recipients of the Company's stock options. (Id., ¶ 20).

All options granted under both stock option plans vested immediately. (Compl., ¶ 18). The Company explicitly stated the options were to be granted with an exercise price equal to the closing market price of Engineered Support's common stock on the date the options were granted. (Id.). The Commission refers to such option grants as "at-the-money," and recipients of such options would profit only if the Company's stock price rose after the options were awarded. (Id., ¶ 2). According to the SEC, however, on a number of occasions between 1997 and 2002, with the Shanahans' participation, knowledge, and consent, Engineered Support repeatedly issued backdated stock options that contained a lower exercise price than the price of the Company's common stock on the date the options were awarded. (Id., ¶ 21). Specifically, the SEC maintains the backdated option grants included those with purported grant dates of December 2, 1996; February 1, March 10, and September 4, 1998; July 1, and December 9, 1999; May 4, 2000; March 29, 2001; and July 24, and October 17, 2002. (Id.).[3] Because Engineered Support's options vested immediately, the backdating of option grants allowed the Shanahans and other option recipients to realize an immediate profit that had not been authorized by Company shareholders. (Id., ¶¶ 4, 22). The Commission alleges the backdating of stock options improperly increased the compensation paid to Engineered Support's officers, employees, and directors by approximately $20 million dollars, including $8,916,562 to Shanahan personally. (Id., ¶ 7). The SEC further contends Shanahan knew, or was reckless in not knowing, that the awarding of such "in-the-money" options was not permitted by Engineered Support's stock option

---

[3] The SEC further alleges that on at least two occasions, Shanahan approved the cancellation and reissuance of previously issued Engineered Support options with new backdated grant dates and exercise prices, to compensate for a decline in the Company's stock price. (Compl., ¶ 5).

plans. (Id., ¶ 24).

With respect to wrongdoing on the part of Shanahan personally, the SEC alleges in part as follows:

> 25. Shanahan actively participated in Engineered Support's efforts to conceal the dates on which it granted backdated options. For each option grant, the Company provided the recipient with a letter announcing the award and an award certificate. The letters contained an "Issuance Date" for the options, and both the letter and the issuance date were backdated, creating the appearance that the letters and certificates had been generated and signed at an earlier date. These letters and certificates were maintained by the Company as a record of its option grants. Between 1997 and 2001, Shanahan personally signed approximately 300 falsely dated award letters and the corresponding option award certificates. Copies of these letters and certificates were subsequently provided to the Company's auditors, who relied upon them as evidence of each stock option award date....
>
> 31. On occasion, Engineered Support's stock price fell shortly after the issuance of backdated stock options. The decline in the stock price caused the options to fall out-of-the-money. On two occasions, Shanahan approved the cancellation and reissuance of the options with a new backdated grant date and lower corresponding exercise price, which restored the lost financial benefit to recipients. In these instances, both the original options issuance and the subsequent, repriced issuance contained backdated grant dates. This double-backdating provided option recipients with the lowest possible exercise price for the options so far that year. These repriced options were issued with purported grant dates of September 4, 1998 and July 1, 1999. Engineered Support never disclosed its repricing of stock options to shareholders, instead reporting only the reissued options as if the original issuance had never occurred....
>
> 34. From 1997 through 2001, Shanahan granted additional stock options for thousands of shares of Company stock to non-employee directors in excess of the numbers authorized by shareholders under any of Engineered Support's stock option plans. As administrator of the Non-employee Director Plan, Shanahan knew, or was reckless in not knowing, that these additional option grants were not permitted.

(Compl., ¶¶ 25, 31, 34).

As further evidence of wrongdoing, the SEC alleges that between 1997 and 2003, the

Shanahans caused Engineered Support to file official documents with the Commission that they knew, or were reckless in not knowing, contained materially false and misleading statements and omissions of material facts relating to the Company's stock option program. (Compl., ¶ 37). Specifically, the SEC maintains the Shanahans approved proxy statements containing Compensation Committee Reports falsely stating all options had been granted at an exercise price equal to the fair market value of the stock on the date of the award. (Id., ¶ 38).[4] By failing to disclose the awards of in-the-money stock options, Engineered Support concealed material amounts of compensation paid to its top executives, particularly to Shanahan. (Id., ¶ 39).[5] Additionally, the SEC alleges the proxy statements concealed the fact that the Company had granted additional options to non-employee directors that were not approved by shareholders. (Id., ¶ 41). Finally, the SEC alleges Shanahan approved and signed Engineered Support's Form 10-K annual reports filed with the Commission, its Form S-8 registration statements, and its Forms 4 and 5, knowing, or being reckless in not knowing, that those forms contained materially false and misleading statements and omissions of material fact concerning Engineered Support's stock option program. (Id., ¶ 43, 45-46). With respect to the Form 10-K, the SEC asserts Shanahan signed a certification pursuant to Section 302 of the Sarbanes-Oxley Act of 2002, in which he certified that the report did not contain any untrue statements or omissions of material fact, and that he had disclosed all instances of fraud involving management to the Company's

---

[4] The SEC alleges the proxy statements were filed with the Commission, distributed to shareholders, and incorporated by reference in the Company's registration statements filed with the Commission. (Compl., ¶ 38).

[5] The Commission maintains levels of executive compensation and stock option grants were material to Engineered Support's shareholders' investment and proxy voting decisions. (Compl., ¶ 42).

Audit Committee and auditors. (Id., ¶ 44).

The SEC filed its Complaint against Shanahan and Shanahan Jr. on July 12, 2007. Based on the foregoing allegations, the Commission asserts the following claims for relief against Shanahan: Violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a) (Count I); Violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 (Count II); Violations of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Exchange Act Rule 14a-9, 17 C.F.R. § 240.14a-9 (Count III); Violations of Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5), and Exchange Act Rule 13b2-1, 17 C.F.R. § 240.13b2-1 (Count IV); Violations of Exchange Act Rule 13a-14, 17 C.F.R. § 240.13a-14 (Count V); Aiding and Abetting Engineered Support's Violations of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Exchange Act Rules 12b-20 and 13a-1, 17 C.F.R. §§ 240.12b-20, 240.13a-1 (Count VI); and Aiding and Abetting Engineered Support's Violations of Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A) (Count VII). (Compl., ¶¶ 52-74).

The SEC seeks (1) a permanent injunction prohibiting Shanahan from violating, or aiding and abetting violations of, the Securities Act, the Exchange Act, and Exchange Act Rules; (2) an order directing Shanahan to disgorge all ill-gotten gains, compensation and benefits obtained through the conduct alleged in the Complaint, plus pre-judgment interest thereon; (3) an order directing Shanahan to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3); (4) an order permanently barring Shanahan from acting as an officer or director of any public company pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2); and (5) an order directing Shanahan to repay bonuses or other incentive-based or equity-based

compensation, and profits realized from the sale of Engineered Support securities within twelve months of the filing of Engineered Support's 2002 Form 10-K, pursuant to Section 304 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7243. (Compl., PP. 22-23).

As stated above, Shanahan filed his Motion for Partial Summary Judgment and Motion to Strike or Dismiss Time-Barred Allegations on September 2, 2008. (Doc. No. 36). Specifically, Shanahan asserts the Complaint contains numerous allegations of conduct that are time-barred by 28 U.S.C. § 2462, and that Prayer for Relief VI does not and cannot state a claim under Section 304 of the Sarbanes-Oxley Act. (Id.).

**DISCUSSION**

**I.      Defendant's Motion For Partial Summary Judgment**

    **A.      Summary Judgment Standard**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not

the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

### B. Application Of Section 304 Of The Sarbanes-Oxley Act Of 2002

Section 304 of the Sarbanes-Oxley Act of 2002 reads in relevant part:

(a) Additional Compensation prior to noncompliance with Commission financial reporting requirements

If an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for –

(1) any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and

(2) any profits realized from the sale of securities of the issuer during that 12-month period.

15 U.S.C. § 7243. Shanahan asserts that he is entitled to summary judgment on this claim, because the Commission cannot prove a necessary element of Section 304, namely that Engineered Support was "required to prepare an accounting restatement." (Memorandum in Support of Michael F. Shanahan, Sr.'s Motion for Partial Summary Judgment and Motion to Strike or Dismiss Time-Barred

Allegations ("Shanahan's Memo in Support"), PP. 6-10). In other words, Shanahan argues that Section 304 only applies where an accounting restatement actually was filed. (Id., P. 8).

The SEC concedes Engineered Support never restated its 2002 financial statements. (Plaintiff's Response to Michael F. Shanahan, Sr.'s Motion to Dismiss, Strike or for Partial Summary Judgment ("SEC's Response"), P. 13 n. 4). The SEC nevertheless claims that because Engineered Support's 2002 financial statement contained material errors, restatement was required under general accounting principles, and thus Section 304 applies. (Id., PP. 13-15).

The Eighth Circuit has never ruled on whether Section 304 requires the actual filing of restated accounting reports. In interpreting the statute, this Court must be guided by the rule that, "[c]ourts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry their 'ordinary, contemporary, common meaning.'" Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380, 388 (1993) (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)). It is the opinion of this Court that the ordinary, contemporary, common meaning of Section 304 is that, before penalties may be imposed, an issuer must be compelled or ordered to prepare a financial restatement, and must actually file the restatement. See S. Rep. 107-205, p.53 (legislative history indicates Congress contemplated the statute's applicability only in terms of "accounting restatements that result from material non-compliance," rather than cases where there *should* have been an accounting restatement because of material non-compliance). See also 3B Sec. & Fed. Corp. Law § 13:58 (2d. ed) (finding the elements of a Section 304 action include that "the issuer must restate its financial statements"). The Court therefore will grant Defendant Shanahan's Motion for Partial Summary Judgment, and dismiss the Commission's claim under Section 304 of the Sarbanes-Oxley Act of 2002.

**II.     Shanahan's Motion To Strike Or Dismiss Time-Barred Allegations**

As stated above, this action was commenced on July 12, 2007.  Defendant Shanahan contends that most of the SEC's allegations are time-barred[6], and thus should be stricken or dismissed.[7] (Shanahan's Memo in Support, PP. 2-6).  Shanahan relies on 28 U.S.C. § 2462, which states in relevant part that, "[e]xcept as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued."

"Courts have construed § 2462 as a general statute of limitations applicable to the entire federal government." SEC v. Williams, 884 F.Supp. 28, 30 (D. Mass. 1995) (internal quotations and citation omitted).  This does not mean, however, that § 2462 applies to every action by a government agency; rather, by the terms of the statute itself, "[i]t is clear that equitable claims which do not constitute a 'civil fine, penalty, or forfeiture' are not subject to the statute of limitations contained in Section 2462." SEC v. Alexander, 248 F.R.D. 108, 115 (E.D. N.Y. 2007), citing SEC v. Jones, 476 F.Supp.2d 374, 380 (S.D. N.Y. 2007); see also Johnson v. SEC, 87 F.3d 484, 487-88 (D.C. Cir. 1996) (relief that is not considered punitive is not subject to § 2462's limitation).

---

[6] The SEC's alleged backdated stock option grants include one on July 24, 2002, and one on October 17, 2002, both within the five-year time period.  (Compl., ¶ 21).  Shanahan claims nine of ten stock option grants set forth in the Complaint pre-date July 12, 2002, but does not allege with which date he disagrees.  (Shanahan's Memo in Support, P. 5).  For this reason, the Court finds both the July 24, and the October 17, 2002, dates are within the statute of limitations and not time-barred.

[7] Rule 12(f) allows the Court to, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed.R.Civ.P. 12(f).  "Rule 12(f) motions are not favored and will not be granted routinely." SEC v. DiBella, 409 F.Supp.2d 122, 126 (D.Conn. 2006) (internal quotations and citation omitted).

In its response, the SEC argues that § 2462 does not apply in this case, as the relief it seeks is remedial rather than punitive.[8] (SEC's Response, PP. 5-10). Thus, the issue before the Court is to which category the SEC's various requests for relief belong. SEC v. Williams, 884 F.Supp. at 30.

### A. Application Of § 2462 To The Remedies Sought By The SEC

#### 1. Civil Penalties

The Commission concedes that the five-year limitation period applies to its request for civil monetary penalties. (SEC's Response, P. 8). Thus, unless the SEC successfully persuades this Court that the § 2462 statute of limitations should be equitably tolled, see Section II(B), *infra*, it will be able to recover civil monetary penalties only for misconduct occurring after July 12, 2002.

#### 2. Disgorgement

Defendant Shanahan concedes the SEC's claim for disgorgement of ill-gotten gains, i.e., the amount realized by placing the allegedly incorrect dates on the stock option grants, is remedial in nature. (Shanahan's Memo in Support, P. 3). Therefore, this claim for relief is not time-barred by § 2462.

#### 3. Injunctive Relief Prohibiting Shanahan From Serving As An Officer Or Director Of A Publicly Traded Company And Permanent Injunction Barring Future Violations Of Securities Laws

Courts apply differing standards in determining whether the injunctive relief sought by the SEC here is subject to § 2462's statute of limitations.[9] For example, the District Court for the

---

[8] The SEC further argues that in any event, the statute of limitations should be equitably tolled for the pre-2002 conduct due to Shanahan's fraudulent concealment of his wrongdoing. (SEC's Response, PP. 10-12).

[9] The Eighth Circuit has not yet decided the issue.

- 11 -

Northern District of California has held that while requests for civil monetary penalties fall within the scope of § 2462, requests for permanent injunctive relief, disgorgement of wrongfully obtained benefits (plus pre-judgment interest), orders precluding defendants from serving as officers or directors of public companies, and repayment of bonuses and stock options, do not. See SEC v. Berry, 2008 WL 2002537 at *7 (N.D. Cal. May 7, 2008); SEC v. Mercury Interactive, LLC, 2008 WL 4544443 at *4 (N.D. Cal. Sep. 30, 2008). See also SEC v. Ogle, 2000 WL 45260 at *3-4 (N.D. Ill. Jan. 11, 2000) (only the remedy of civil penalties is subject to § 2462 limitations period, as accounting, disgorgement, and injunction constitute equitable relief). Other courts consider the consequences of particular forms of relief, however, in assessing whether or not they amount to punishments subject to § 2462. See, e.g., Johnson v. SEC, 87 F.3d at 487-88 (relief that is not punitive is not subject to § 2462's limitation period); SEC v. Jones, 476 F.Supp.2d at 381 ("limitations period in § 2462 applies to civil penalties and equitable relief that seeks to punish, but does not apply to equitable relief which seeks to remedy a past wrong or protect the public from future harm"); SEC v. Quinlan, 2008 WL 4852904 at *11 (E.D. Mich. Nov. 7, 2008) (same).

Upon consideration, the Court finds it need not decide whether the SEC's various requests for injunctive relief are equitable as a matter of law, or may constitute a "penalty" subject to § 2462's statute of limitations depending on the facts of this case, as it is undisputed the SEC has alleged at least two acts of backdating that fall within the applicable five year period. See Compl., ¶ 21; see also SEC v. Alexander, 248 F.R.D. at 115. If the SEC can prove these allegations, it may seek both the director and officer bar and the injunction as remedies.[10] The Court therefore will deny this portion

---

[10] Shanahan concedes the SEC's allegations regarding conduct that is not time-barred may support its claims for injunctive relief. (Reply of Michael F. Shanahan Sr. in Support of his Motion for

of Shanahan's Motion to Strike or Dismiss Time-Barred Allegations.[11]

B. **Equitable Tolling Of The Statute Of Limitations**

As stated above, in its response the SEC asserts that, even with respect to claims for relief that are subject to § 2462, the limitations period may be subject to equitable tolling. (SEC's Response, PP. 10-12). "To establish that equitable tolling applies, a plaintiff must prove the following elements: fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts." SEC v. Mercury Interactive, LLC, 2008 WL 4544443 at *5 (internal quotations and citation omitted). In the instant case, the Commission alleges that Shanahan, "took affirmative steps to conceal the fraud and prevent the Commission and others from discovering it." (SEC's Response, P. 11). Specifically, the SEC alleges Shanahan signed approximately 300 falsely dated option award letters, which were provided to Engineered Support's auditors as evidence of award dates, and that he approved and signed numerous Commission filings containing false and misleading statements regarding the pricing of Engineered Support's option grants. (Id., citing Compl., ¶¶ 26, 37-41, 43-45). In light of these allegations, the SEC may well be able to demonstrate that, "its failure to discover the operative facts at an earlier date was the result of [Shanahan's] concealment rather than any lack of diligence." SEC v. Mercury Interactive, LLC, 2008 WL 4544443 at *5.

---

Partial Summary Judgment and Motion to Strike or Dismiss Time-Barred Allegations, P. 7).

[11] In light of this Court's ruling in Section I, *supra*, that the Commission has not plead all required elements of a Section 304 claim, the Court need not address whether its request for repayment of bonuses and proceeds of stock sales would be time-barred under § 2462.

Upon consideration, the Court finds it need not reach the question of equitable tolling at this time. Rather, given this Court's conclusion that at least a portion of the SEC's requests for relief are not time-barred, the Court finds, "[a]pplication of the doctrine [of equitable tolling] more appropriately may be addressed in the context of a motion for summary judgment if and when the filing of such motion becomes appropriate." SEC v. Mercury Interactive, LLC, 2008 WL 4544443 at *5. See also SEC v. Alexander, 248 F.R.D. at 120 (citation omitted) ("it is the most prudent course for the parties to conduct fact discovery on....equitable tolling on the basis of fraudulent concealment."). Accordingly, the Court will deny Shanahan's Motion to Strike or Dismiss claims or portions of claims as barred by the five year limitations period set forth in § 2462.[12]

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Michael F. Shanahan, Sr.'s Motion for Partial Summary Judgment and Motion to Strike or Dismiss Time-Barred Allegations (Doc. No. 36) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

Dated this 12th day of December, 2008.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[12] The Court finds Shanahan's assertion that this case would be "considerably streamlined" if any time-barred claims were stricken to be without merit, as Shanahan himself admits all aspects of the SEC's claim for disgorgement survive. (See Shanahan's Memo in Support, P. 6). Thus, the Court finds that, regardless of its rulings on the instant motion, discovery necessarily will encompass stock option grants that pre-date July 12, 2002.