UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff(s), | ) ) | |
| vs. | ) ) | Case No. 4:07CV270 JCH |
| MICHAEL F. SHANAHAN, SR., and MICHAEL F. SHANAHAN, JR., | ) ) ) ) | |
| Defendant(s). | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Michael F. Shanahan, Jr.'s ("Shanahan") Motion to Compel Discovery, filed June 9, 2009. (Doc. No. 83). The matter is fully briefed and ready for disposition.

By way of background, this case involves allegations of the Securities and Exchange Commission (the "Commission") centering on the alleged "backdating" of stock options at Engineered Support Systems, Inc. between 1996 and 2003. (Shanahan's Memo in Support, P. 2). In July, 2007, the United States Attorney's Office for the Eastern District of Missouri ("USAO") filed criminal charges against Shanahan, involving allegations substantially similar to the Commission's claims at issue here. (Id.). In connection with the criminal investigation, USAO investigators conducted a number of interviews with potential witnesses, and prepared written summaries of those interviews. (Id.; Plaintiff's Response to Shanahan's Motion to Compel Production ("Commission's Response"), P. 1). During the course of the USAO and Commission investigations, the USAO provided the Commission with copies of thirty interview memoranda drafted by its agents. (Commission's Response, P. 2). Shanahan did not receive copies of the memoranda during the criminal action. (Shanahan's Memo in Support, PP. 2-3). Shanahan did receive a few interview

summaries directly from the USAO, however, including five written summaries of interviews prepared by an FBI agent, and United States Postal Service memoranda regarding interviews of Gary Gerhardt conducted in June, 2006, and March, 2007, and of Steven Landmann conducted in June, 2006. (Id., P. 3 and n. 2).

On April 1, 2009, Shanahan's counsel requested that the Commission produce, "[a]ll transcripts or summaries of investigative interviews relating to this case, including, but not limited to, all interview transcripts, notes of interviews, summaries of interviews, and all Federal Bureau of Investigation Form FD-302s." (Shanahan Memo in Support, P. 3). Counsel for the Commission informed the USAO of this request, and after consultation, the Acting United States Attorney for the Eastern District of Missouri instructed counsel for the Commission to assert a law enforcement privilege over the interview memoranda provided to the Commission. (Commission Response, P. 3).[1] On May 18, 2009, the Commission provided a privilege log to Shanahan, in which it disclosed the identity of each interviewee, and lodged a single privilege objection to the production of the summaries, the "law enforcement/investigative privilege." (Shanahan Memo in Support, P. 3).

As stated above, Shanahan filed the instant motion on June 9, 2009, seeking production of the summaries of investigative interviews.

**DISCUSSION**

"There is a limited, federal common law of privilege which protects criminal investigatory files." Lykken v. Brady, 2008 WL 2077937 at *5 (D.S.D. May 14, 2008) (citations omitted). The privilege is predicated on the public interest in minimizing the disclosure of documents that would

---

[1] The Commission attaches to its response as Exhibit B the May 15, 2009, letter from Michael W. Reap, Acting United States Attorney.

tend to reveal law enforcement investigative techniques or sources. In re Adler, Coleman, Clearing Corp., 1999 WL 1747410 at *3 (S.D.N.Y. Dec. 8, 1999).

"There are three prerequisites to the assertion of the privilege: (i) the head of the department having control over the information requested must assert the privilege; (ii) the official in question must do so based on actual personal consideration; and (iii) he or she must specify the information purportedly covered by the privilege, and accompany the request with an explanation as to why such information falls within the scope of the privilege." Adler, 1999 WL 1747410 at *3 (citations omitted). "Once these conditions are satisfied, the information sought will not be disclosed unless the party seeking disclosure establishes that its need for the information outweighs the public interest in preventing disclosure." Id. (citation omitted); see also Lykken v. Brady, 2008 WL 2077937 at *5, quoting Stephens Produce Co. v. NLRB, 515 F.2d 1373, 1377 (8th Cir. 1975) ("The privilege is a 'very narrow one and need only be honored where the policy behind its invocation by the agency outweighs any necessity for the information shown by the party seeking it."). Further, "[t]he proponent of the law enforcement privilege bears the burden of proving its claim."[2] Alexander v. F.B.I., 186 F.R.D. 154, 167 (D.D.C. 1999) (citation omitted).

In balancing the public interest in nondisclosure against the need of a particular litigant for access to the privileged information, district courts consider the following factors:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending

---

[2] Courts need not, "defer blindly to assertions made by a law enforcement official regarding the existence of the law enforcement privilege." MacNamara v. City of New York, 249 F.R.D. 70, 85 (S.D.N.Y. 2008).

> or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; [and] (10) the importance of the information sought to the plaintiff's case.

In re Sealed Case, 856 F.2d 268, 272 (D.C. Cir. 1988) (citations omitted). "Importantly, across-the-board claims of law enforcement privilege supported only by conclusory statements will not suffice." Alexander, 186 F.R.D. at 167.[3]

Upon consideration of the foregoing, the Court finds that to the extent they apply at all in this case[4], the factors favor requiring the Commission to produce the requested summaries of investigative interviews. For example, with respect to the extent to which disclosure would thwart governmental processes by discouraging citizens from giving the government information, the Court finds the USAO's rationale on this point consists solely of boilerplate and conclusory statements. See May 15, 2009, Letter from Michael W. Reap, Acting United States Attorney, to the Commission, P. 1; see also Miller v. U.S. Dept. of Agriculture, 13 F.3d 260, 263 (8th Cir. 1993) (citation omitted) ("We conclude that the government must make a more specific showing of why disclosure of the documents requested here could reasonably be expected to interfere with enforcement proceedings, and that it has not yet done so."). With respect to the impact upon persons who have given information of having their identities disclosed, as stated above the Commission already has revealed this information in the privilege log provided to Shanahan.[5] With respect to whether the information

---

[3] "[T]he balancing test for determining whether the law enforcement privilege applies must be conducted with an eye towards disclosure." Torres v. Kuzniasz, 936 F.Supp. 1201, 1210 (D.N.J. 1996).

[4] The Court finds factors three, seven and eight have no relevance here.

[5] The Court notes the Commission provided this information against the wishes of the Acting United States Attorney.

sought is factual data or evaluative summary, it is undisputed the summaries contain only factual information, albeit potentially in an edited format. See Adler, 1999 WL 1747410 at *4 (citations omitted) ("Neither the investigatory privilege nor the attorney work product doctrine ordinarily precludes discovery of factual or statistical information, as opposed to mental impressions or opinions, even if such information is embodied in privileged materials or serves as the basis for opinions of the investigator or attorney involved.").

The fifth factor, i.e., whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question, is often considered by courts to be the most important. Lykken, 2008 WL 2077937 at *7.

> In general, courts interpreting FOIA[6] have held that the primary concern over disclosure of law enforcement reports is to prevent a party who is himself the subject of a criminal investigation from obtaining premature discovery of law enforcement actions that may be taken against him. Where there is no prospect of law enforcement proceedings being taken, or where the enforcement action has already been taken, or where the party seeking discovery is not the party who is the subject of the investigation, the rationale for nondisclosure does not apply, and the files should be made available.

Id. (internal quotations and citations omitted). Upon review of the record, the Court agrees that the criminal case against Shanahan has concluded. Specifically, the Court notes the USAO dismissed the indictment against Shanahan on July 21, 2008, and the Commission itself later acknowledged the "resolution of the criminal charges" against him. (See Doc. No. 35, P. 2; see also Cause No. 4:07CR175 JCH, Doc. No. 254). The Court does not find Mr. Reap's present assertion that the criminal investigation and prosecution are "on hold," rather than completed, sufficient to overcome

---

[6] "Because of the paucity of cases developing the federal common law investigatory file privilege, many courts have analogized from decisions rendered under the exemption from disclosure for law enforcement investigatory files under the Freedom of Information Act ('FOIA')." Lykken, 2008 WL 2077937 at *7 (citations omitted).

the indications in the record that there no longer exists an ongoing investigation concerning Shanahan. Factor five thus weighs in favor of disclosure as well. See Miller, 13 F.3d at 263 (internal quotations and citation omitted) (in order to invoke the privilege, the government must demonstrate that "disclosure could reasonably be expected to interfere with enforcement proceedings.").[7]

Finally, with respect to the importance of the information sought to Shanahan's case, and whether the information sought is available through other discovery or from other sources, the Court agrees with Shanahan that statements taken at a time more contemporaneous with the events at issue have unique value. See Fontaine v. Sunflower Beef Carrier, Inc., 87 F.R.D. 89, 93 (E.D. Mo. 1980). Thus, neither the documents already provided to Shanahan, nor the taking of depositions of the witnesses identified in the Commission's privilege log, provides an acceptable substitute for the information contained in the summaries of interviews taken several years ago.[8]

---

[7] The above discussion of factor five applies to factor six as well, and thus whether or not the police investigation has been completed will not be addressed separately in this Order.

[8] In light of the above ruling, the Court need not address Shanahan's claims that the privilege was improperly asserted or waived.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Michael F. Shanahan, Jr.'s Motion to Compel Discovery (Doc. No. 83) is **GRANTED**, and the Commission is ordered to produce the summaries of investigative interviews requested in the motion no later than **Friday, July 10, 2009**.[9]


Dated this 6th day of July, 2009.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[9] Shanahan previously has indicated his willingness to receive the memoranda subject to a protective order shielding the documents from disclosure outside of this litigation. (Shanahan's Reply to SEC's Opposition to Motion to Compel Production, P. 11 n. 8).