UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) )   Case No. 4:07CV270 JCH |
| MICHAEL F. SHANAHAN, JR., | ) ) ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Michael F. Shanahan, Jr.'s Amended Motion for Summary Judgment, filed November 2, 2009. (Doc. No. 124). The matter is fully briefed and ready for disposition.

**BACKGROUND**[1]

At all relevant times, Engineered Support Systems, Inc. ("ESSI" or the "Company") was a Missouri corporation, with its principal place of business in St. Louis, Missouri. (Complaint ("Compl."), Cause No. 4:07CV1262 ERW[2], Doc. No. 1, ¶ 14). ESSI was a holding company for a number of wholly-owned subsidiaries that design and manufacture military support equipment and electronics, primarily for the U.S. Department of Defense. (Id.). ESSI's common stock was traded on the NASDAQ NMS, and was registered with the United States Securities and Exchange Commission (the "Commission" or "SEC") pursuant to Section 12(g) of the Securities Exchange Act

---

[1] The Court views the facts in the light most favorable to Plaintiff, the non-moving party, as it must for purposes of the instant motion.

[2] On October 24, 2007, this Court consolidated Cause No. 4:07CV1262 ERW with this action. (Doc. No. 32).

of 1934 ("Exchange Act"), until it was acquired by DRS Technologies, Inc. on January 31, 2006. (Id.). Defendant Michael F. Shanahan, Jr. ("Shanahan Jr.") served on ESSI's Board of Directors from 1994 through January 31, 2006, and served on the Compensation Committee of the Board of Directors from 1995 through 2002. (Id., ¶ 13).

According to the SEC, between at least 1985 and January, 2006, ESSI issued stock options to employees and non-employee directors pursuant to shareholder-approved stock option plans. (Compl., ¶ 15). From 1997 through 2002, the Company had two types of stock option plans in effect: one for officers, key employees and consultants ("Stock Option Plan"), and another for non-employee directors ("Non-employee Director Plan").[3] (Id.). Copies of these plans were included in the Company's proxy statements filed with the Commission, and the plans were approved by the Company's shareholders at annual shareholder meetings. (Id.).

The Stock Option Plan set a total amount of options to be allocated among officers, key employees, and consultants, and charged ESSI's Compensation Committee with administration of the plan. (Compl., ¶ 16). The Compensation Committee had the exclusive power to grant options under the plan, subject to approval by the Chairman of the Board, Michael F. Shanahan, Sr. (Id.). According to the Commission, Shanahan Jr. assumed a leading role in making recommendations regarding executive compensation, including the award of options to Company employees under the Stock Option Plan. (Id., ¶ 19).

All options granted under the Stock Option Plan vested immediately. (Compl., ¶ 18). The Company explicitly stated the options were to be granted with an exercise price equal to the closing market price of ESSI's common stock on the date the options were granted. (Id.). The Commission

---

[3] With respect to Shanahan Jr.'s involvement with the Non-employee Director Plan, the Commission alleges only that he received profits of $379,738 from his receipt of unauthorized options. (Compl., ¶ 8).

refers to such option grants as "at-the-money," and recipients of such options would profit only if the Company's stock price rose after the options were awarded. (Id., ¶ 2). According to the SEC, however, on a number of occasions between 1997 and 2002, with Shanahan Jr.'s participation, knowledge, and consent, ESSI issued backdated stock options that contained a lower exercise price than the price of the Company's common stock on the date the options were awarded. (Id., ¶ 21).[4] Because ESSI's options vested immediately, the backdating of option grants allowed Shanahan Jr. and other option recipients to realize an immediate profit that had not been authorized by Company shareholders. (Id., ¶¶ 4, 22). The Commission alleges the backdating of stock options improperly increased the compensation paid to ESSI's officers, employees, and directors by approximately $20 million dollars. (Id., ¶ 7).

With respect to Shanahan Jr., the SEC alleges as follows:

26. Shanahan Jr. also assisted in the Company's concealment of its backdating and caused the Company to fail to keep proper records reflecting its option grants. As a member of the Compensation Committee, Shanahan Jr. failed to ensure that the Compensation Committee kept records reflecting the dates on which the committee authorized the Company's option grants....

28. On July 12, 2000, Shanahan Jr. received a list of potential option recipients containing a date, "4-May-00," and a price, "10 13/16," which was the closing price of the stock on that date. On July 17, Shanahan Jr. transmitted changes to this list to the Company's CFO. Engineered Support subsequently issued options with a May 4, 2000 grant date and a 10 13/16 exercise price, which was the lowest possible exercise price for that quarter. When the option grant was finalized in late July, Shanahan Jr. signed the option award letter for his father, which contained a false date of May 5, 2000....

30. On July 16, 2002, Shanahan Jr. sent an email to Engineered Support's CFO and instructed him to issue options at a previously agreed upon price. Shanahan Jr. provided the number of options for four top executives and instructed the CFO to issue those options that day, writing, "we can issue the

---

[4] The SEC maintains the backdated option grants included those with purported grant dates of December 2, 1996; February 1, March 10, and September 4, 1998; July 1, and December 9, 1999; May 4, 2000; March 29, 2001; and July 24, and October 17, 2002. (Compl., ¶ 21).

>others when the final list is completed." The options were to be issued with a June 14, 2002 grant date, which was the low point in Engineered Support's stock price so far that quarter. However, the Company's stock price hit a new low on July 24. The next day, Shanahan Jr. contacted Engineered Support's Controller and CFO to suggest using July 24 date as the option grant date. As late as August 8, Shanahan Jr. and the Company's CFO were modifying the number of options each recipient was to receive by adding new recipients and reducing the number of options the top executives were to receive as of July 16. The final option certificates were created on August 9 with a July 24, 2002 grant date and exercise price.

(Compl., ¶¶ 26, 28, 30).

As further evidence of wrongdoing, the SEC alleges that between 1997 and 2003, Shanahan Jr. and others caused ESSI to file official documents with the Commission that they knew contained materially false and misleading statements and omissions of material facts relating to the Company's stock option program. (Compl., ¶ 37). Specifically, the SEC maintains Shanahan Jr. and others approved proxy statements containing Compensation Committee Reports falsely stating all options had been granted at an exercise price equal to the fair market value of the stock on the date of the award. (Id., ¶ 38).[5] By failing to disclose the awards of in-the-money stock options, ESSI concealed material amounts of compensation paid to its top executives. (Id., ¶ 39). The SEC further alleges Shanahan Jr. approved and signed ESSI's Form 10-K annual reports filed with the Commission, its Form S-8 registration statements, and its Forms 4 and 5, knowing that those forms contained materially false and misleading statements and omissions of material fact concerning ESSI's stock option program. (Id., ¶ 43, 45-46).

The SEC filed its Complaint against Shanahan Jr. on July 12, 2007. Based on the foregoing allegations, the Commission asserts the following claims for relief against Shanahan Jr.: Violations

---

[5] The SEC alleges the proxy statements were filed with the Commission, distributed to shareholders, and incorporated by reference in the Company's registration statements filed with the Commission. (Compl., ¶ 38).

- 4 -

of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a) (Count I); Violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 (Count II); Violations of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Exchange Act Rule 14a-9, 17 C.F.R. § 240.14a-9 (Count III); Aiding and Abetting ESSI's Violations of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Exchange Act Rules 12b-20 and 13a-1, 17 C.F.R. §§ 240.12b-20, 240.13a-1 (Count VI); and Aiding and Abetting ESSI's Violations of Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A) (Count VII). (Compl., ¶¶ 52-60, 67-74).

As stated above, Shanahan Jr. filed the instant Amended Motion for Summary Judgment on November 2, 2009, asserting there exist no genuine issues of material fact, and he is entitled to judgment as a matter of law. (Doc. No. 124).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not

the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I.  Count VI

Count VI alleges that Shanahan Jr. aided and abetted ESSI in its filing of materially misleading reports with the SEC, in violation of §13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20 and 13a-1, 17 C.F.R. §§ 240.13a-1 and 240.12b-20. (Compl., ¶¶ 67-70). To determine aiding and abetting liability, the Eighth Circuit has adopted a tripartite test, as follows:

1)  the existence of a securities law violation by the primary party (as opposed to the aiding and abetting party);

2)  "knowledge" of the violation on the part of the aider and abettor; and

3)  "substantial assistance" by the aider and abettor in the achievement of the primary violation.

K&S Partnership v. Continental Bank, N.A., 952 F.2d 971, 977 (8th Cir. 1991) (citation omitted), cert. denied, 505 U.S. 1205 (1992). For purposes of the instant motion, the Court assumes a violation of the securities laws by the primary party, ESSI.[6] The Court thus turns to a discussion of

---

[6] According to the SEC, ESSI violated § 13(a) and Rules 12b-20 and 13a-1, "by filing reports on Forms 10-K containing false and misleading disclosures that options were priced with an exercise price equal to the closing price of ESSI's common stock on the dates the options were awarded." (Plaintiff's Response to Shanahan Jr.'s Motion for Summary Judgment ("SEC's Opp."), P. 8).

elements two and three.

Under Eighth Circuit law, knowledge is a critical element for aiding and abetting liability, inherent in the terms themselves. Camp v. Dema, 948 F.2d 455, 459 (8th Cir. 1991).

> If it were otherwise, aiding and abetting would be indistinguishable from simply aiding. This would cast too wide a net, bringing under it parties involved in nothing more than routine business transactions.

Id. (citation omitted). The Eighth Circuit is clear, however that while some knowledge must be shown for aiding and abetting liability, the extent of such knowledge, "remains flexible and must be decided on a case-by-case basis." Id.

"In determining the level of knowledge required, a court should consider the knowledge and substantial assistance elements of aiding and abetting liability relative to one another and where there is minimal showing of substantial assistance, a greater showing of scienter is required." S.E.C. v. Thielbar, 2008 WL 4360964 at *11 (D.S.D. Sep. 24, 2008) (internal quotations and citations omitted.

> [For example, a] party who engages in atypical business transactions or actions which lack business justification may be found liable as an aider and abettor with a minimal showing of knowledge. Conversely, a party whose actions are routine and part of normal everyday business practices would need a higher degree of knowledge for liability as an aider and abettor to attach.

Camp, 948 F.2d at 459 (citations omitted).

In his Motion for Summary Judgment, Shanahan Jr. asserts he had no knowledge that his conduct with respect to the allegedly false or misleading statements in the 10-K filings constituted part of "an overall activity that had a wrongful purpose." (Memorandum in Support of Motion for Summary Judgment ("Shanahan Jr.'s Memo in Support"), P. 4). In support of this contention, Shanahan Jr. notes that of the thirty-one witnesses deposed in this matter only Steven Landmann, ESSI's former controller, testified he even knew the options were retrospectively priced, let alone that such pricing was wrongful, and he never disclosed his concerns to Shanahan Jr. (Id., PP. 4-5).

Shanahan Jr. further maintains that even if he had known about the options backdating, he could not have appreciated the wrongfulness of the activities, because he was unaware of the accounting rules governing option grants. (Id., PP. 5-6). Finally, Shanahan Jr. asserts his actions did not constitute substantial assistance to the wrongdoing of others, because (1) he was merely an outside director at ESSI, with no office and no day-to-day responsibilities at the company, (2) he was not responsible for ensuring that ESSI's option grants conformed to appropriate accounting rules, and (3) the Compensation Committee on which he served only determined the number of options to be awarded, and played no role in setting the strike price of such options. (Id., P. 6).

By way of response, the SEC presents evidence that in addition to his involvement in the determination of the number of options to be allocated to each recipient, Shanahan Jr. communicated with ESSI's Chief Financial Officer, Gary Gerhardt, regarding the pricing of such options as well. (Plaintiff's Statement of Facts as to which a Genuine Issue Exists ("Plaintiff's Facts"), PP. 3-4, citing Plaintiff's Exh. 7, Gerhardt Dep. Tr., PP. 189-93; Plaintiff's Exh. 8, Gerhardt Proffer Statement, P. 2). The SEC maintains Shanahan Jr.'s involvement in the pricing decisions is corroborated by faxes, notes, and e-mails. (SEC's Opp., P. 13; Plaintiff's Facts, P. 4, citing Plaintiff's Exhs. 9-11). Furthermore, with respect to Shanahan Jr.'s admitted lack of understanding of accounting principles, the SEC responds that Shanahan Jr., "did not need any training in accounting to understand that such backdating was improper, and violated ESSI's stock option plans, and that the information ESSI was disclosing to its shareholders concerning the pricing of stock options was false." (SEC's Opp., P. 10).

Upon consideration, the Court finds the SEC's evidence sufficient to create an issue of fact with respect to both the level of Shanahan Jr.'s involvement, and his knowledge of the wrongfulness of the alleged conduct. Summary judgment on Count VI will therefore be denied. See S.E.C. v.

Cohen, 2006 WL 2225410 at *3 (E.D. Mo. Aug. 2, 2006), quoting In re K-tel Intern., Inc. Sec. Litig., 300 F.3d 881, 894 (8th Cir. 2002) ("'Generally, the issue of whether a particular intent existed is a question of fact for the jury.'").

## II.  Count VII

Count VII alleges that Shanahan Jr. aided and abetted ESSI in its failure to keep accurate records of transactions and disposition of assets, in violation of §13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A).  (Compl., ¶¶ 71-74).  Specifically, the SEC alleges that, "[a]s a member of the Compensation Committee, Shanahan Jr. failed to ensure that the Compensation Committee kept records reflecting the dates on which the committee authorized the Company's option grants." (Id., ¶ 26; see also Doc. No. 43, P. 14 n. 12 ("The Commission did separately allege the basis for its claim of aiding and abetting violations of Section 13(b)(2)(A) of the Exchange Act--that Shanahan Jr. failed to ensure that the Compensation Committee kept records reflecting the dates on which the committee authorized option grants."")).[7]

In his Motion for Summary Judgment, Shanahan Jr. presents evidence that the Compensation Committee had no obligation to keep such records in the first instance.  (Shanahan Jr.'s Memo in Support, PP. 7-8, citing Shanahan Jr.'s Exhs. 16 (Lewi Depo.), PP. 63-64; 4 (Saint Depo.), PP. 71-72; 11 (Wims Depo.), P. 49).  Shanahan Jr. further notes the auditors at PricewaterhouseCoopers responsible for reviewing ESSI's financial records testified they were aware the Compensation Committee kept no minutes or notes, but raised no objection because they believed such record keeping was not required.  (Id., P. 8, citing Shanahan Jr.'s Exhs. 9 (Briggs Depo.), PP. 62, 184-185; 10 (Kent Depo.), PP. 115-116).  Shanahan Jr. thus maintains that because it was not his responsibility

---

[7] To the extent the SEC attempts to shift the factual predicate of Count VII in its response to Shanahan Jr.'s Motion for Summary Judgment, the Court will not consider such new assertions here.

to maintain the books and records, his failure to do so cannot constitute aiding and abetting. (Id.).

Upon review of the record, the Court agrees. Specifically, the Court finds the SEC fails to present any evidence that Shanahan Jr. provided substantial assistance to ESSI in its alleged failure to keep accurate records of transactions and disposition of assets. Shanahan Jr.'s Motion for Summary Judgment on Count VII of Plaintiff's Complaint must therefore be granted. See S.E.C. v. Cedric Kushner Promotions, Inc., 417 F.Supp.2d 326, 337 (S.D. N.Y. 2006) (granting summary judgment in the absence of evidence that defendant was responsible for the corporation's books and records or for maintaining adequate controls, or that he aided or abetted any violation with respect to those requirements).

### III.     Counts I, II, III And VI

Shanahan Jr. finally asserts Counts I, II, III and VI fail, because the Options Pricing Sentence ("Options granted are at an option price equal to the market value on the date the option is granted"), was not material as a matter of law. (Shanahan Jr.'s Memo in Support, PP. 9-14). "To establish materiality, 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" S.E.C. v. Cohen, 2006 WL 2225410 at *2, quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976) (quotation omitted). "Ordinarily, materiality is a question of fact for the jury; however, [the Eighth Circuit has] recognized an exception in cases where the false information is so insignificant, in relation to the total mix of data available, that it would not have mattered to a reasonable investor." Gebhardt v. Conagra Foods, Inc., 335 F.3d 824, 829 (8th Cir. 2003) (citation omitted). See also S.E.C. v. Reyes, 491 F.Supp.2d 906, 909 (N.D. Cal. 2007) (internal quotations and citation omitted) (summary judgment rarely the appropriate vehicle for resolving materiality inquiry, because "[a]ssessing the materiality of a misrepresentation requires

delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts, and these assessments are peculiarly ones for the trier of fact."). Under Eighth Circuit law, the question of materiality always hinges on the particular circumstances of the corporation in question. Gebhardt, 335 F.3d at 829.

In the instant case, the SEC presents evidence that options pricing and alleged options backdating were in fact material to investors. For example, two stock research analysts who followed and analyzed ESSI's stock for a number of years both testified they considered ESSI's proxy disclosures regarding management compensation and stock option grants in evaluating whether to recommend ESSI as an investment to clients, and further that as analysts, they would have wanted to know that ESSI was backdating stock option grants to correspond with low points in the Company's stock price. (See Doc. No. 106, ¶¶ 82-85, citing Akyol Dep. Tr., PP. 12-19, 22-23, 25-30, 32-33, 51-52, 101-102, 146-48, 173-74, 205-06; Kirchberger Dep. Tr., PP. 11, 17, 19-20, 22-28). Furthermore Mr. Jay Weinstein, an investment advisor at Oak Forest Investment Management who at one time controlled approximately 3-4 % of ESSI's outstanding stock, testified to the effect that he reviewed proxy statements specifically for information about management compensation, including salary, bonuses and stock options, and that as an investor, he would have wanted to know whether a company was backdating stock options. (Id., ¶¶ 88-92, citing Weinstein Dep. Tr., PP. 15-16, 27-34, 41-44, 52-56, 78-80). The Court finds this evidence sufficient to suggest the alleged backdating constituted part of the total mix of information available to investors, deserving of some consideration. Gebhardt, 335 F.3d at 829.

In addition, the Court finds another piece of the mix to be the concern these alleged actions raise regarding the management of ESSI. Id. In other words, while investors may care most that a company is profitable, "they may also find it significant that a profitable company is meanwhile giving

away assets in the form of discounted treasury stock." Reyes, 491 F.Supp.2d at 910. Management's integrity almost certainly is important to investors on some level, and so the Court holds the question of materiality is best left for the factfinder at trial. See Gebhardt, 335 F.3d at 830 ("In order to take this decision away from the jury, the circumstances must make it obvious why a reasonable investor would not be concerned about the facts misrepresented."). Shanahan Jr.'s Motion for Summary Judgment on Counts I, II, III and VI will therefore be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Michael F. Shanahan, Jr.'s Amended Motion for Summary Judgment (Doc. No. 124) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.


Dated this 12th day of January, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE